WILLIAM A. DUNNINGTON *vs.* CATHARINE R. EVANS,
and others.

*Trusts—Sale of Trust property— Validity of Sale—Prac-
tice in Chancery—Act of* 1862, *ch.* 156—*Persons not in
Being — Leasehold estate — Conclusiveness of Decree —
Cestuis que trust—Judicial discretion.*

By the terms of a deed of trust of real and leasehold property
made in 1844, the trust property was to be distributed among
the children of the grantor upon the arrival of the youngest
child at the age of twenty-one years, "the shares of the sons
to go to them absolutely, and the shares of the daughters to be
held by said trustee, his heirs," &c., "in trust for said daughters,
during the residue of the term of their natural lives, respectively,
and after the death of either of them, in trust for such person
or persons as would, by the now existing laws of Maryland, be
the heirs of said daughters, respectively, to take an estate in
fee simple in lands by descent from them." On the 3d of
October, 1865, the youngest child having arrived at the age of
twenty-one, a bill was filed in the Circuit Court of Baltimore
City by the surviving children of the grantor, for the sale of
the trust property. All the persons, then in being, having an
interest in the trust estate, were made parties, either plaintiff
or defendant; among the defendants being also the heir at law
of the trustee named in the deed, who was then dead. The bill
alleged that the deed not only gave the trustee power to sell
the whole trust estate, but authority, also, to invest the shares
of the daughters upon the arrival of the period for distribution.
The bill further alleged "that the time specified in said deed
for the division of the trust estate had arrived, and that it
would be to the interest and advantage of all the parties inter-
ested therein that the said property should be sold for division,
and that it cannot be advantageously divided amongst them,
except by a sale thereof." The deed was filed with and made
part of the bill. A decree was passed appointing S. trustee to
sell the property, and the proceeds of the sale made by him
were distributed in accordance with the construction given by
the Court to the terms of the trust, as set forth in the deed, the
share of the only surviving son being paid to him, absolutely,
and the shares of the daughters being audited to said trustee.
The share to which C. R. E., one of the daughters, was en-
titled for life, was by order of Court invested and held by the

Dunnington *vs.* Evans, and others.

trustee in trust for her for life, and after her death for such person or persons as would be her heirs, &c., according to the terms of the trust. On the petition of C. R. E. filed October 1873, W. was appointed trustee in place of S. who had died, with all the powers and authority conferred by said deed; and in April 1879, W., the new trustee, filed his petition for authority to make sale of certain parts of the trust estate, among which was a sub-groundrent of $108.89. On the same day an order was passed as prayed, and said rent was sold to W. A. D., and the sale was duly reported to and ratified by the Court on the 10th of May, 1880. The purchase money was paid in full, and the rent was conveyed to the purchaser. The trustee proved false to his trust, and appropriated the proceeds of the sale to his own use, and was removed from his position on the 18th of February, 1884. Thereupon H. D. L. was appointed trustee in his place, with the same power and authority conferred by the trust deed of 1844. All the proceedings above referred to were had in the case instituted in 1865, in the Circuit Court of Baltimore City. On the 29th of December, 1892, a bill was filed in the same Court by C. R. E., her husband, children, and grandchildren, and H. D. L. as trustee to set aside the orders passed in April 1879, and May 1880, respectively, in the former case; the first authorizing, and the second ratifying, the sale of said ground rent to W. A. D.; and the Court below vacated and rescinded these orders. On appeal taken by W. A. D. it was HELD:

1st. That it was too late for those who were parties to the former case to object to the validity of the sale on the ground that no power of sale was conferred upon the trustee by the deed of 1844, by which the trust was created, and that, therefore, neither the original trustee, nor any of his successors, nor the Court, could sell, or authorize a sale of the trust estate, or any part of it.

2nd. That the trust property having been decreed to be sold, and the shares of the daughters invested, and changes of investment made from time to time by order of the Court, if the construction of the deed set forth in the bill in regard to the powers conferred upon the trustee and adopted by the Court in its various decrees and orders, was erroneous, such erroneous construction should have been corrected, if at all, by some direct proceeding, in the same Court to set the sale aside, or by appeal.

3rd. That the case made by the bill was covered by the Act of 1862, ch. 156, (subsequently amended by the Act of 1868, ch. 273, and codified as sec. 198 of Art. 16 of the Code) in its original form, which provided that in "all cases where one or more persons is or are entitled to an estate for life or years

in land, and other persons are entitled to a remainder or remainders vested or contingent," &c.; * * * "or any other interest vested or contingent in the same land, on application of any of the parties in interest a Court of equity may, if all the parties in being are parties to the proceedings, decree a sale or lease," which decree by the terms of the Act is made binding upon "all persons whether in being or not, who claim any interest in said land under any of the parties to said decree, or under any person from whom any parties to such decree claim."

4th.  That as all of the persons in being and having an interest in the trust estate, were made parties to the case, the unborn children and grandchildren of C. R. E. were, under the very terms of the Act itself, equally bound with those who were *in esse* and parties to the suit; and they were all so bound, not only by the decree of 1865, but also by the orders of 1879, and 1880, under which the sub-groundrent in question was sold by the trustee W., and in reliance upon which the appellant became the purchaser.

5th.  That so far as related to the binding effect of said orders of 1879 and 1880, upon those not *in esse*, the portion of the trust estate which was sold under these orders, being a sub-groundrent, was leasehold; and the trustee held the legal estate until the trust was ended by the termination of the lives of the life tenants, and he was the sole representative of that estate.  Being a party to the decree whereby the leasehold was ordered to be converted into money, those entitled in remainder, especially as they were not *in esse* at the time, were bound and concluded by the decree.

6th.  That under the practice in chancery a sale of trust property for the purpose of a reinvestment, may be ordered whenever, on a full presentation of the facts, the Court having jurisdiction over the administration of the trust, may, in its best judgment and judicial discretion, determine such a course to be for the interest of the beneficiaries.

APPEAL from the Circuit Court of Baltimore City.

The case is stated in the opinion of the Court.

The cause was argued before BRYAN, FOWLER, PAGE, ROBERTS and BOYD, J.

*Thomas Ireland Elliott* for the appellant.

*Thomas Hughes*, for the appellees.

FOWLER, J., delivered the opinion of the Court.

On the 23d April, 1844, John W. Wilson conveyed certain pieces of property situated in Baltimore City to David Stewart in trust for the grantor during his life, and after his death in trust for his seven children, who are named, with remainders to them, contingent upon their surviving until the youngest of them shall arrive at the age of twenty-one years. Upon the arrival of such youngest child at the age named, the trust property was to be distributed among the beneficiaries, " the shares of the sons to go to them absolutely, and the shares of the daughters to be held by said trustee, his heirs, &c., in trust for said daughters during the residue of the terms of their natural lives, respectively, and after the death of either of them, in trust for such person or persons as would by the now existing laws of Maryland be the heirs of said daughters respectively, to take an estate in fee simple in lands by descent from them * * * * "

In acordance with this provision of the trust deed, on October 3d, 1865, the youngest child having arrived at the age of twenty-one, the surviving children of said grantor filed a bill in the Circuit Court of Baltimore City for the sale of the trust property, and the suit thus instituted is entitled *Wilson et al. vs. Clark et al.* All the persons then in being having an interest in the trust estate were made parties, either plaintiff or defendant; among the latter being James Stewart, the heir at law of David Stewart, trustee named in the deed. The bill alleged, among other things, that the original trustee, David Stewart, was dead; that the property in question, consisting of fee simple and leasehold, had been conveyed to David Stewart in trust for the use of the grantor for life, then in further trust that the income of said property should be

applied to the use of the seven children of the grantor until the youngest living should attain the age of twenty-one years; then in further trust *to sell and divide the proceeds thereof* among such of said children as might then be alive, and the survivors of them, and the heirs *"in loco parentis"* of such of them as might then be dead, so that the shares of the boys might be *paid* over to them, and the shares of the girls *invested* for their *separate use respectively, for life,* with remainder to such persons, &c., as provided in the deed of trust. The bill further alleged "that the time specified in said deed for the division of the trust estate had arrived, and that it would be to the interest and advantage of all the parties interested therein that the said property should be sold for division, and that it cannot be advantageously divided amongst them except by a sale thereof"; that, because of the limitations in the said deed in relation to some of the shares, no sale can be effected except under a decree of a Court of equity, and finally praying that said property may be sold for division, &c., and the proceeds thereof divided, &c., and for general relief. The deed was filed with, and made part of, the bill; and the original trustee being dead, a decree was passed by which T. Parkin Scott was appointed trustee to make the sale, which was by him duly made and reported to, and finally ratified by, said Court. The proceeds of sale were distributed in accordance with the construction given by the Court to the terms of the trust as set forth in the deed,— that is to say, the share of the only surviving son was paid to him absolutely, and the shares of the daughters were audited to said trustee, and by him subsequently invested under order of Court.

The share to which Catharine R. Evans was entitled for life, being the share to which the property here in question is claimed to belong, was, by order of Court, invested in Baltimore City stock, and held by the trustee in trust for said Catharine during her life, and after her death for

such person or persons as would be her heirs, &c., according to the terms of the trust. Subsequently, other orders were passed by said Court, changing the investment of this and other shares of the trust estate from time to time, but such new investments were always directed to be held under the same trusts.

On the 23d October, 1873, Catharine R. Evans, with another of the equitable life tenants, filed their petition, alleging the death of the trustee, T. Parkin Scott, and asking that John Wm. Wilson be appointed trustee in place of said Scott, with all the powers and authority conferred by said deed. Wilson was accordingly appointed as prayed, and on the 9th April, 1879, filed his petition asking for authority and direction to make sale of certain parts of the trust estate, among which was a sub-groundrent of $108.89, which was sold to the appellant, William A. Dunnington, which sale was duly reported to, and ratified by, the Court on the 10th May, 1880. The purchase money was paid in full, and the rent was duly conveyed to the appellant. The trustee, however, proved false to his trust, appropriated the proceeds to his own use, and was removed from his position as trustee on the 18th February, 1884. Thereupon, Henry D. Loney was appointed trustee in the place of said Wilson, with the same power and authority conferred by the trust deed of 1844. On the same day he was appointed, the new trustee was directed to bring suit on the bond of his predecessor to compel settlement of the trust, and also to file a bill in equity in said Court to set aside the conveyance of said rent to the appellant, Dunnington. All the proceedings we have thus far referred to were had in the case of *Wilson et al. vs. Clark et al.*, which, as we have seen, was begun by the bill filed in 1865 for the sale of the trust estate, and the investment of the shares of the daughters. It was not, however, until the 29th December, 1892, that the bill in the case now before us was filed by Mrs. Evans, her husband, children, grandchildren, and Henry D. Loney, as trustee, to set

aside the orders passed in the case of *Wilson vs. Clark,* on the 9th April, 1879, and 10th May, 1880 respectively—the first authorizing, and the second ratifying, the sale of said ground rent to the appellant. The Court below vacated and rescinded these orders, and the purchaser, Dunnington, has appealed.

We have thus very fully recited the proceedings in the case of *Wilson vs. Clark,* because we think the facts which thus appear furnish satisfactory answers to the questions presented by this appeal.

1. It was contended on the part of the appellees that no power of sale was conferred upon the trustee by the deed of 1844, by which the trust was created, and the first trustee, David Stewart, was appointed, and that therefore neither the original trustee, nor any of his successors, nor the Court, could sell or authorize a sale of the trust estate, or any part of it. But it is clearly too late now for those who were parties to the case of *Wilson vs. Clark* to object to the validity of the sale on this ground. The bill in the case just named was filed thirty years ago, alleging in the most explicit terms that the deed not only gave the trustee *power to sell* the whole trust estate, but authority, also, to *invest* the shares of the daughters. This may or may not have been an erroneous construction of the deed, but it was in fact adopted by the Court. And, accordingly, the trust property was decreed to be sold—the shares of the daughters, including that of Mrs. Evans, were ordered to be held by the trustee under the deed, and were subsequently invested according to its provisions, as set forth in the bill and construed by the Court. It would seem that the bill of 1865, filed in *Wilson vs. Clark,* was filed for the purpose of having the trust estate of Wilson administered in a Court of equity; and it abundantly appears, from the proceedings we have already referred to, that the Circuit Court of Baltimore City did in fact assume and exercise jurisdiction over the administration of the trust estate. T. Parkin Scott,

who was the successor of the original trustee, was authorized to sell, and to hold the proceeds under the deed for investment. He invested, and from time to time, by order of Court, changed investments. And, upon the death of Scott, J. Wm. Wilson was appointed trustee in his place, with the same power and authority, namely, the power and authority conferred by the deed of 1844. The last named trustee likewise sold, under the orders of Court, certain parts of the trust estate for investment, including the rent in question. Now, assuming that the view of the appellees is correct, and that the construction of the deed set forth in the bill, and adopted by the Court in its various decrees and orders, is erroneous, such erroneous construction should have been corrected, if at all, by some direct proceeding, either in the same Court, to set the sale aside, or by appeal. The language of ALVEY, former Chief Justice, in delivering the opinion of the Court in the case of *Long et al. vs Long et al.*, 62 *Md.*, 62, so clearly states and applies this principle that we quote it: "Where there was jurisdiction in the Court, the erroneous or improvident exercise of it, or the exercise of it in a manner not warranted by the evidence before it,— *whether that be in respect to the construction of written evidence,* or deductions drawn from unwritten proof,—the errors, however apparent, are not to be corrected at the expense of the purchaser, who had a right to rely upon the order of the Court as an authority emanating from competent jurisdiction. * * * * Any other principle would unsettle and render insecure the larger portion of the titles of the country." See also *Barrick et al. vs. Horner*, 78 *Md.*, 253.

2. While it must be conceded, of course, that the Court had jurisdiction of the subject matter in the case of *Wilson vs. Clark*, yet it was contended that it did not have jurisdiction of all of the necessary parties. In the first place, the appellees, Mrs. Evans, her husband, and their four children then living, were all parties, either plaintiffs or defend-

ants, and are therefore bound by the original decree in
*Wilson vs. Clark,* as well as by the order passed in the
same cause directing the sale of the ground rent in ques-
tion, unless, as contended by the appellees, this last named
order is void because it was passed without notice to them.
This objection we will consider presently, but the important
question which presents itself is whether the children of Mrs.
Evans, and their descendants, not born when the case of
*Wilson and Clark* was instituted, and the decree therein
was passed, are bound thereby. The proceedings we are
examining were had in 1865, and therefore subsequent to the
passage of the Act of 1862, ch. 156, which was subsequently
amended by the Act of 1868, ch. 276, and now codified
as section 189 of Article 16 of the Code. But it is appar-
ent that the case made by the bill filed in *Wilson vs. Clark*
was covered by the Act of 1862 in its original form. It
provided that " in all cases, where one or more persons is
or are entitled to an estate for life or years in land, and
other persons are entitled to a remainder or remainders
vested or contingent, &c., * * * or any other interest vested
or contingent in the same land, on application of any of the
parties in interest a Court of equity may, if all the parties
in being are parties to the proceedings, decree a sale or
lease," which decree, by the terms of the Act, is made
binding upon " all persons, whether in being or not, who
claim any interest in said land under any of the parties
to said decree, or under any person from whom any par-
ties to such decree claim."

As we have already seen, all of the persons in being,
and having an interest in the trust estate, were made par-
ties to the case of *Wilson vs. Clark,* and therefore the
unborn children and grandchildren of Mrs. Evans are, under
the very terms of the Act itself, equally bound with those
who were *in esse* and parties to the suit; and they are
all so bound, not only by the decree of 1865, but also by the
orders of 1879 and 1880, under which the sub-groundrent

in question was sold by the trustee Wilson, and in reliance upon which the appellant became purchaser.

But, in addition to this, there is another view, which we think is conclusive, so far as relates to the binding effect of said orders of 1879 and 1880 upon those not *in esse.*

The portion of the trust estate which was sold under these orders, being a sub-groundrent, was leasehold; and as was said in *Long vs. Long, supra,* "the trustee held the legal estate until the trust was ended by the termination of the lives of the life tenants; and he was the sole representative of that estate. Being a party to the decree whereby the leasehold was ordered to be converted into money, those entitled in remainder, especially as they were not *in esse* at the time, are bound and concluded by the decree." *Long et al. vs. Long et al.,* 62 *Md.,* 68, and authorities there cited.

3. It was urged, however, that the sale of the sub-rent in question, and the subsequent conveyance thereof by the trustee Wilson to the appellant, made under the orders mentioned, are void, not only as against those unborn, but even as against those of the appellees who were in being, and parties to the suit, because made without notice to them. But this view is, we think, based upon a misapprehension or misapplication of the authorities cited to support it. While it may be conceded that ordinarily a Court of equity should not order a sale of trust property without notice to the *cestuis que trust,* yet it is equally well settled that under our chancery practice a sale for the purpose of a reinvestment may be ordered whenever, on a full presentation of the facts, the Court having jurisdiction over the administration of the trust estate, may, in its best judgment and judicial discretion, determine such a course to be for the interest of the beneficiaries. To require an original proceeding by petition or bill against the *cestui que trust,* the appointment of guardians *ad litem,* the taking of testimony, and in general the same proceedings

as on a bill for sale, would not only cause great delay, but unnecessary expense in making investments by trustees. While there may be many cases in which the Court would deem it proper to give the *cestuis que trust* notice before ordering a sale for reinvestment, yet we do not think such a course is necessary to confer jurisdiction for such a purpose. In the case we are examining, the sale was made, as we think fully appears by the petition filed by the trustee, for the purpose of getting rid of property not considered a good investment for the reasons set forth in the petition, and for the purpose of reinvesting the proceeds. The Court having the authority to order the sale, and reinvestment of the proceeds, all the parties are bound.

The result will be that the appellant takes and holds the sub-rent in question free from the claims of the appellees.

And it follows that the decree appealed from, inasmuch as it declared the order under which the sale and conveyance were made to the appellant to be void, will be reversed, and the bill dismissed.

> *Decree reversed, and bill dismissed,*
> *with costs to appellant.*